[Cite as *State v. Bruce*, 2023-Ohio-4719.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOHN M. BRUCE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 BE 0009

---

Criminal Appeal from the
Belmont County Court – Northern Division
of Belmont County, Ohio
Case No. 22TRC01078N

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, *Atty. Jacob A. Manning*, Assistant Prosecutor, for Plaintiff-Appellee and

*Atty. Michael P. Dunham*, for Defendant-Appellant.


Dated: December 22, 2023

**Robb, J.**

{¶1} Appellant, John M. Bruce, appeals the judgment convicting him of operating a motor vehicle under the influence (OVI) in violation of R.C. 4511.19(A)(1)(A) and sentencing him to 60 days in jail. Appellant argues his conviction is against the manifest weight of the evidence and not supported by sufficient evidence. He also claims the court erred as a matter of law finding he was under the influence, and he was denied the effective assistance of trial counsel. For the following reasons, we affirm.

Statement of the Case

{¶2} In July of 2022, Appellant was cited for OVI, a first-degree misdemeanor; failure to file for registration, a fourth-degree misdemeanor; failure to control, a minor misdemeanor; and no motorcycle endorsement, a minor misdemeanor.

{¶3} On July 29, 2022, the court issued a warrant for his arrest based on his failure to appear. The warrant was withdrawn when Appellant appeared on August 3, 2022. He entered a plea of not guilty; was released on bond; and was appointed counsel. (August 3, 2022 Judgment.)

{¶4} The matter proceeded to a bench trial. The state called one witness and introduced one exhibit. Appellant testified on his own behalf.

{¶5} The state called Officer Sara Vinca. She was one of two responding troopers to a crash on a Belmont County road on July 23, 2022. Vinca was working the midnight shift, from 10 p.m. to 6 a.m., as an Ohio State Highway Patrol Officer. At the time of trial she was a former Ohio State Highway Patrol Officer and working as a New Albany Police Officer. She recalled there were two separate crashes, and she was handling Appellant's. It was approximately 10:11 p.m., and she had just started her shift.

{¶6} Upon Vinca's arrival at the scene, she saw two motorcycles laying down. Appellant had significant injuries and was being treated by EMS when she arrived. Vinca spoke to Appellant in the ambulance at the scene and later that same night at the hospital. Her investigation revealed Appellant and his girlfriend were both riding motorcycles. She said: "From the statement and from what we observed from both parties, him and his

girlfriend were traveling together.  She went down, and for him to miss her, he went down as well on his motorcycle." (Trial Tr. 7-10.)

{¶7}    She spoke with Appellant at the scene while he was being treated by EMS. When asked if she noticed evidence of intoxication, Vinca responded:  "While speaking with Mr. Bruce, he had a strong odor of alcohol on his breath, and he showed red glassy eyes."  She also confirmed he was unable to perform field sobriety tests because EMS was "in a hurry to get him out of there." (Trial Tr. 10.)

{¶8}    Vinca left the crash scene and immediately went to the hospital.  Upon her arrival at the hospital, Appellant was not in his room.  She  believed he was having scans. When he returned, she did not read him his *Miranda* rights but took his statement regarding the accident.  At trial, she explained that she asked Appellant several questions about the accident.  She wrote down his answers for him since he was unable to write at the time.

{¶9}    Vinca testified:  "He stated that he was coming from the Barton Trap [a bar] and that he had two Fireball shots and four Bud Light bottles of beer.  I asked him about when he started drinking.  He started around 7:00 pm. And then stopped drinking around 10:00 p.m.  Then he stated he had not eaten since 2:00 p.m." (Trial Tr. 10-12.)  Appellant is 5 foot seven inches and weighs about 160 pounds.  (Trial Tr. 22.)

{¶10}  On cross-examination, Vinca explained that she asked Appellant when he began drinking and when he consumed his last alcoholic beverage before the accident, to which he responded "Right before we left." (Trial Tr. 16-17.)  Vinca was unable to state whether Appellant's consumption of alcohol caused or contributed to his crash or his "laying his motorcycle down."  And she denied knowing anything about his specific injuries.  (Trial Tr. 19-21.)

{¶11}  Appellant's traffic crash statement, identified as State's Exhibit One, was admitted without objection.  It contains the handwritten questions and answers Vinca asked Appellant the night of the crash.  Vinca wrote out the questions and answers, and Appellant signed both pages.   It provides in part that Appellant was not wearing a helmet, and he was following his girlfriend on her motorcycle.  He saw her go off of the right side of the road, and "in order to not hit her [Appellant] laid [his motorcycle] down."  He could not avoid the accident.  He admitted to consuming "2 shots of Fireball and 4 Bud Light

bottles." He told Vinca he started drinking at "about 7 p.m. right before the band started[,]" and he consumed his last alcoholic beverage "right before we left." Vinca asked him about the last time he ate, and he responded "egg sandwich at 2 p.m." The traffic crash witness statement is dated July 23, 2022. It does not indicate what time it was prepared. (State's Exhibit One.)

{¶12} Vinca was unable to secure a chemical test from Appellant because he was transported to an out-of-state hospital. She asked him for a urine sample for testing, but he declined. (Trial Tr. 13-14.)

{¶13} Appellant's motion for acquittal on venue grounds was overruled.

{¶14} Appellant testified on his own behalf. He explained how he met a friend at a bar for dinner the night of the accident. In his initial testimony describing the evening in question, Appellant referenced four times that he and his friend went to get something to eat. Appellant said he only had one Bud Light but said his friend had been "into a couple [of drinks] before she met me there." He said she was drinking vodka and was inebriated. (Trial Tr. 25-26.)

{¶15} He said he ate a cheesesteak sandwich. Appellant also said he only consumed one beer around 7 or 7:30 p.m. He said they talked with friends and danced. He explained how his friend wanted to drive the backroads home because she was inebriated. So, he followed her, and a deer jumped into her lane of travel and stopped in the middle of the road. She swerved and went down, and he "laid his bike down" so he would not hit her. (Trial Tr. 26-27.) He said he followed her home so he could "set a pace" and use his headlights to "keep somebody from hitting her." (Trial Tr. 26.)

{¶16} At trial, Appellant did not deny making the statement he drank four beers and two shots of Fireball. He also did not deny it was his signature on the statement. Instead, he denied remembering it. (Trial Tr. 27.) Appellant said he does not recall making the statements the officer testified about. He said he has "lost memory" because of his injuries. He spent seven days in the hospital. (Trial Tr. 27-30.)

{¶17} Appellant suffered severe injuries. He broke his clavicle and had to get 10 screws and a plate. He also sustained a concussion, a fractured skull, and he broke two ribs. He does not remember speaking with Vinca in the hospital, but explained he does not remember much after the accident. He lost consciousness and said he was given

pain medication "almost immediately." Appellant denies being impaired at the time of the accident and said he would have killed his friend had he not crashed his motorcycle. (Trial Tr. 26-31.)

**{¶18}** On cross-examination, Appellant was asked if he recognized his signature. He said "I don't believe its forged. I would say it's mine." "It looks like - - I couldn't even tell. I don't remember any of this stuff. I was on pain medication and everything. I don't remember." Appellant then testified he has no memory of speaking with the officer that night. (Trial Tr. 31-32.)

**{¶19}** Further, the state showed how Appellant's testimony was consistent with his statement contained in State's Exhibit One, except for what he ate and drank. His in-court testimony confirmed he was traveling about 35-40 miles per hour. He also verified during trial the length of time he spent at the bar that night and he was not wearing a helmet. This was the same as his trial testimony. The only differences between his testimony and the written statement were what he ate and drank.

**{¶20}** The state asked Appellant about declining to take the urine test, and Appellant responded he did not decline, stating: "I have a paper with my lab work from the hospital, and there is no alcohol or drugs on the paper." (Trial Tr. 31-35.) This statement prompted questioning about whether Appellant had provided his attorney with these medical records, and Appellant explained he had just recently obtained them and he did not bring them with him to the trial. (Trial Tr. 36-37.)

**{¶21}** However, his attorney had the medical records in his possession but indicated he did not proffer them during trial because they were not disclosed in advance of trial. Defense counsel did, however, attempt to introduce the records on redirect, and the state objected. Thereafter, the state agreed to suspend the trial to allow it to review the records and prepare accordingly. But the defense indicated they may be able to resolve the matter more quickly, which prompted a bench conference off the record. (Trial Tr. 38-41.)

**{¶22}** When the record resumed, the court asked the defense counsel: "this argument that we had back and forth over those medical records from the hospital is now a moot argument. Is that correct?" To which Appellant's counsel agreed, "That's correct." The court then asked defense counsel: "They [the medical records] do not list any alcohol

or drug testing results?" Defense counsel agreed they do not, and the defense rested. (Trial Tr. 41-42.)

{¶23} The defense argued during its closing remarks that for the court to find Appellant's driving was impaired required the court to speculate. The defense contended the court could not reach this conclusion based on the officer's testimony about his height and weight and how much he acknowledged he drank in State's Exhibit One. (Trial Tr. 43-44.)

{¶24} The trial court found the state met its burden of proof on count one and convicted him of OVI. When announcing its decision at the conclusion of trial, the court explained that it relied on Trooper Vinca's testimony that Appellant had a strong odor of alcohol and red glassy eyes. The court also noted the importance of Appellant's admissions. The court emphasized the similarities between Appellant's traffic crash statement and trial testimony. It highlighted the only notable differences were about how many alcoholic beverages he consumed and when he had last eaten. The court concluded by stating the state only had to prove "he was under the influence at the time that he was operating that motorcycle. The state has met that burden * * *." (Trial Tr. 46-47.)

{¶25} The trial court also sustained the state's motion to nolle prosequi counts two, three, and four. (December 16, 2022 Journal Entry.) The court sentenced him to 180 days in jail, with 120 days suspended, two years of probation, and imposed a $375 fine. (January 18, 2023 Judgment.)[1]

{¶26} Appellant appealed, and the trial court stayed his sentence pending appeal. (February 15, 2023 Judgment.)

Assignment of Error Number One

{¶27} Appellant's first assigned error contends:

"Under Ohio law, a defendant may only be convicted of drunk driving after either driving impaired or after failing a chemical test. O.R.C. 4511.19. The trial court erred in its conclusion of law that there does not need to be any sign of impairment in order to find

---

[1] We issued a limited remand so the trial court could issue one judgment evidencing the fact of conviction and sentence, which the trial court issued November 1, 2023.

a defendant guilty of driving under the influence, when no chemical test was administered. Tr. 47:7-12."

**{¶28}** Appellant was charged and convicted of operating a motor vehicle under the influence in violation of R.C. 4511.19(A)(1), which states:

> No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:
>
> The person is under the influence of alcohol, a drug of abuse, or a combination of them.

**{¶29}** Appellant argues his bloodshot and glassy eyes do not show he was driving under the influence because these things may have been caused by his significant injuries. Appellant also claims the lack of sobriety and chemical tests support a reversal. Appellant argues the lack of conviction for a moving violation also shows reversal is warranted. Last, he claims his alleged admission to drinking two Fireballs and four Bud Light beers cannot and does not show impairment as a matter of law. For the following reasons, we disagree.

**{¶30}** R.C. 4511.19 does not define "under the influence of alcohol," and as such, courts have filled the void. The Ohio Supreme Court has recited one definition with approval:

> * * * Under the influence of alcohol covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in the consumption of alcohol and which tends to deprive the one so using it of the clearness of intellect and control of himself which he would otherwise possess. No matter what state of intoxication a person may be in, if he drives a vehicle upon the public road, he becomes a menace to the public and subjects himself to the penalties of the statute.

*State v. Hardy*, 28 Ohio St.2d 89, 90, 276 N.E.2d 247 (1971).

**{¶31}** Appellant relies on the Ohio Jury Instruction Committee's definition of "under the influence" and claims it was not satisfied here. This court has stated, however, the "O.J.I. is not the law of the state, but merely represents commentary on the law." *State v. Morris*, 7th Dist. Monroe No. 03 MO 12, 2004-Ohio-6810, ¶ 19.

**{¶32}** This court in *State v. North*, 2020-Ohio-6846, 164 N.E.3d 1121, ¶ 27 (7th Dist.), found being "under the influence" means the state must prove "a defendant operated a vehicle 'when his faculties were appreciably impaired by the consumption of alcohol.' *State v. Smith*, 7th Dist. Mahoning No. 05 MA 219, 2007-Ohio-3182, 2007 WL 1806651, ¶ 76, quoting *State v. Crites*, 7th Dist. Harrison No. 99-518-CA, 2000-Ohio-2665, 2000 WL 1781450." We noted the defendant's behavior should be a primary consideration. *Id.*

**{¶33}** The Eleventh District Court of Appeals in *State v. Evans*, 127 Ohio App.3d 56, 63, 711 N.E.2d 761 (11th Dist.1998) fn 2, listed factors supporting an officer's decision to proceed with field sobriety tests after an initial stop. These factors are also relevant when analyzing evidence of impairment or when an individual is "under the influence."

> These factors include, but are not limited to (1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court * * *. No single factor is determinative.

*Id.*

{¶34} The facts in evidence show Appellant was "under the influence" at the time that he operated a vehicle "when his faculties where appreciably impaired by the consumption of alcohol." *State v. North*, 7th Dist. 2020-Ohio-6846, 164 N.E.3d 1121, ¶ 26 (7th Dist.) (noting factors such as odor of alcoholic beverage, defendant lying in the road in front of a bar late at night, glassy, bloodshot eyes, slurred speech, and sluggish movements are indicators of impairment).

{¶35} The evidence shows Appellant crashed or "laid down his motorcycle" at approximately 10 p.m. that night after leaving a bar. He admits crashing his motorcycle to avoid running over his friend, who lost control of her motorcycle. He admitted his friend was inebriated and caused him to crash. Appellant had a strong odor of breath alcohol, had red and glassy eyes, and admitted to consuming four beers and two fireball shots during a three-hour period immediately prior to the accident. Furthermore, Appellant did not deny making the admissions about what he drank and ate in his statement. He only denied any memory of making the statement.

{¶36} Contrary to Appellant's assertion, no corresponding moving violation is required. Moreover, no chemical or urine tests are required to convict under R.C. 4511.19(A)(1). Accordingly, this assigned error lacks merit as the trial court did not err as a matter of law.

### Assignment of Error Number Two

{¶37} Appellant's second assignment of error asserts:

"Under Crim. R. 29 and Crim.R. 33 a conviction must be set aside if there is insufficient evidence, or if the conviction is against the manifest weight of the evidence. *Id.* When there is insufficient evidence, a judgment of acquittal is required. *Id.* Here, there was no evidence of impairment. Tr. 46:6-20. The trial court erred by convicting the defendant because the conviction was both with insufficient evidence and against the manifest weight of the evidence. *Id.*"

{¶38} Appellant claims for the same reasons stated in assigned error number one that we should find his conviction is not supported by sufficient evidence, i.e., there was no evidence establishing impairment. He also claims his conviction is against the manifest weight of the evidence for these same reasons. Appellant alleges there were no visible signs of impairment, no moving violation, and generally no signs of intoxication.

He claims his version of the facts shows he only consumed one beer and only crashed to save the life of his friend.

{¶39} Whether evidence is legally sufficient to sustain a verdict is a question of law, which appellate courts review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3. On appeal, we determine whether the evidence presented, viewed in a light most favorable to the prosecution, allows a rational trier of fact to find the essential elements of the crime established beyond a reasonable doubt. *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, *reconsideration denied sub nom. State v. Walker*, 160 Ohio St.3d 1517, 2020-Ohio-6946, 159 N.E.3d 1179.

{¶40} As for his manifest weight argument, a manifest weight review requires us to review the evidence and determine whether this is an exceptional case in which it is patently apparent the trier of fact lost its way. *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541 (1997).

> The * * * weight of the evidence addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? * * * [A]lthough there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. * * * 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' * * *.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

{¶41} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis,* 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18, citing *Iler v. Wright,* 8th Dist. Cuyahoga No. 80555, 2002-Ohio-4279, ¶ 25.

{¶42} As stated, Appellant was convicted of count one, a violation of R.C. 4511.19(A)(1). The evidence at trial was more than sufficient to establish he was

operating his motorcycle under the influence of alcohol on the night in question. Again, Appellant admitted to consuming four beers and two fireballs during a three-hour period immediately before the accident. The accident happened after 10 p.m. and after he left a bar. Moreover, Trooper Vinca testified that in her experience, Appellant exhibited signs of impairment since he had a strong odor of breath alcohol and his eyes were red and glassy.

**{¶43}** Significantly, Appellant does not deny signing the traffic crash statement in which he gave specific details about what alcohol he consumed that evening. He stated he drank "2 shots of Fireball and 4 Bud Light bottles." He told Vinca he started drinking at "about 7 p.m. right before the band started[,]" and he consumed his last alcoholic beverage "right before we left." Vinca asked him the last time he ate, and he responded "egg sandwich at 2 p.m." He acknowledged his signature was on the statement but denied any memory of speaking with Trooper Vinca.

**{¶44}** The other details contained in Appellant's traffic crash statement were consistent with Appellant's testimony and memory after the fact—except what he ate and drank that night.

**{¶45}** The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N .E.2d 504, ¶ 51-57. Here, the trial court believed the testimony of an Ohio State Highway Patrol Officer who was trained and experienced in detection of OVI. *See State v. Nash*, 5th Dist. Stark No. 2014CA00159, 2015-Ohio-3361, ¶ 20. Furthermore, the trooper's observations about Appellant's strong odor of alcohol and red, glassy eyes were substantiated by the written traffic crash statement in which Appellant admitted to consuming six alcoholic beverages during a three-hour period immediately before the accident.

**{¶46}** All the evidence, when reviewed in a light most favorable to the state, provides sufficient evidence of operating a vehicle under the influence of alcohol. "[A] defendant's driving need not be erratic or in violation of a traffic law to be found guilty of driving under the influence." *State v. Evans,* 12th Dist. Warren No. CA2009-08-116, 2010-Ohio-4402, ¶ 17. Thus, we conclude there was sufficient evidence for the court to conclude Appellant was operating his motorcycle under the influence of alcohol.

**{¶47}** Furthermore, this court cannot find this is the exceptional case in which we should find the court lost its way and created a manifest miscarriage of justice. Instead, the trial court, as the factfinder, found Vinca's testimony was more credible than Appellant's trial testimony. The trier of fact is in the best position to weigh the evidence and assess witness credibility by observing the gestures, voice inflections, and demeanor of those testifying. *State v. Baker*, 2020-Ohio-7023, 166 N.E.3d 601, ¶ 148 (7th Dist.), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Appellant's testimony about what he ate and drank that night was before the court, and it evidently did not believe him.

**{¶48}** Accordingly, both aspects of this assignment lack merit and are overruled.

<u>Assignment of Error Number Three</u>

**{¶49}** Appellant's third assignment of error asserts:

"Trial counsel was ineffective by not filing a motion to suppress the evidence, because the officer interrogated the Defendant outside the officer's jurisdiction in a custodial interrogation. State's Ex 1. This Exhibit was a statement against the Defendant-Appellant Mr. Bruce's interest, where the fact of the interrogation being custodial was not disclosed until trial, in violation of Rules 12E and 16 of the Ohio Rules of Criminal Procedure. Tr. 11-18."

**{¶50}** This assigned error essentially consists of two arguments. First, Appellant lists numerous allegations, which he claims collectively constitute ineffective assistance of counsel. Second, Appellant maintains his trial attorney's failure to object to the admission of State's Exhibit One was prejudicial error. We address each argument in turn.

**{¶51}** Appellant's first argument is his attorney committed cumulative errors which collectively constitute ineffective assistance of trial counsel. These alleged errors include his attorney's alleged failure (1) to demand a jury trial, (2) to make an opening statement, (3) to move for an acquittal at the close of evidence, (4) to object to the scope of the redirect examination of Officer Vinca, (5) to object to the lack of warning about Appellant's right to remain silent before testifying at trial, (6) to object on grounds of speculation to certain questioning of Officer Vinca, (7) to introduce medical records which would have

allegedly contradicted the state's evidence, (8) to demand findings of fact or conclusions of law, and (9) to move to suppress his statement contained in State's Exhibit One.

**{¶52}** To establish a claim of ineffective assistance of counsel, a defendant must show both his trial counsel's performance was deficient, in that it fell below an objective standard of care, and the deficient performance resulted in prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). The burden is on the defendant to prove ineffectiveness of counsel. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985).

**{¶53}** Licensed attorneys in Ohio are presumed competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential because of the strong presumption counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. In fact, appellate courts are prohibited from second-guessing trial counsel's strategic decisions. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

**{¶54}** This assigned error lists nine reasons Appellant claims his attorney's performance was deficient, however, he provides no law or argument in support of the first eight contentions. Appellant provides citations to the record where the alleged failures occurred during trial and one-sentence conclusory assertions that each of the eight alleged failures shows his trial court counsel was deficient. Appellant does not provide legal authority in support of any of the first eight contentions and likewise provides no analysis or argument identifying how each alleged failure was prejudicial.

**{¶55}** App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Regarding his first eight assertions, Appellant does not show, let alone argue, how his trial counsel's performance fell below an objective standard of care or how these eight alleged deficiencies resulted in prejudice.

**{¶56}** "[I]t is not the function of the court of appeals to root out law in support of an argument, App.R. 16(A)(7) * * *." *Matter of E.T.*, 2023-Ohio-444, 208 N.E.3d 910, ¶ 58

Case No. 23 BE 0009

(7th Dist.). Because these first eight contentions are unsupported, we will not construct the arguments for him. Thus, Appellant's first eight assertions of ineffective assistance of counsel are overruled. *Byers DiPaola Castle v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2010-P-0063, 2011-Ohio-6095, ¶ 35 (disregarding conclusory arguments unsupported in appellant's brief).

{¶57} The only claim supported by law and argument in Appellant's first sub-argument in his third assignment of error is the assertion his trial attorney was deficient for failing to file a motion to suppress. Appellant asserts his statement contained in State's Exhibit One was obtained via an illegal custodial interrogation while he was hospitalized out of state. He claims the officer was outside her jurisdiction when she interviewed him the night of the accident. He also claims she read Appellant his *Miranda* rights at the hospital, which establishes the interrogation was custodial.

{¶58} It is undisputed Appellant was hospitalized in West Virginia when Trooper Vinca secured his statement which she wrote down, had him sign, and which was ultimately introduced at trial as State's Exhibit One.

{¶59} However, to the extent Appellant claims Vinca testified she read him his *Miranda* warning that night, the factual predicate is incorrect. Contrary to the assertion in Appellant's brief, Trooper Vinca testified she did <u>not</u> read Appellant his *Miranda* rights before interviewing him at the hospital in West Virginia. Officer Vinca was asked the following on direct examination by the prosecutor:

Q  * * * Did you provide a Miranda Warning to him at that time?

A  Before he gave his statement?

Q  Correct.

A  No I did not.

(Trial Tr. 11.)

{¶60} The failure to pursue a motion to suppress does not automatically constitute ineffective assistance of counsel. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, citing *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574 (1986). To establish ineffective assistance of counsel for failure to pursue a motion to suppress, a defendant must show the motion to suppress had a reasonable probability of success on the merits and there is a reasonable probability the result of the trial would

have been otherwise had the motion been granted. *State v. Ash*, 2018-Ohio-1139, 108 N.E.3d 1115, ¶ 22 (7th Dist.), citing *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 94.

**{¶61}** The state counters that a motion to suppress would have been unsuccessful based on the facts here because Appellant's hospital interview was not a custodial interrogation.

**{¶62}** Thus, we must analyze whether a motion to suppress based on these facts had a reasonable probability of success on the merits and if there is a reasonable probability the result of the trial would have been otherwise had the motion been granted.

**{¶63}** As stated, the testimony confirms Appellant was not in his room but was likely undergoing tests when Vinca arrived at the hospital. When he returned to his room, she did *not* read him his *Miranda* rights, but took his statement regarding the accident. She asked him ten questions about the accident, and she wrote down her questions and his answers since he was unable to write at the time. He signed both pages of the statement. Vinca agrees the interview took place in a hospital in West Virginia. She also asked him for a urine sample, and he declined.

**{¶64}** Vinca was not asked how long she was at the hospital or how long the interview of Appellant lasted. It appears the exchange only included the questions and answers listed on State's Exhibit One. This exhibit consists of two pages of handwritten questions and answers and is preceded by Appellant's three-sentence statement which states: "I was following my girlfriend on her motorcycle. I saw her go off the right side of the road. In order to not hit her[,] I laid mine down." (State's Exhibit One.)

**{¶65}** Appellant testified at trial he does not remember his in hospital interview. He argues Trooper Vinca was without jurisdiction to conduct the custodial interview and claims the testimony established she read him his *Miranda* rights. Appellant focuses on the jurisdictional argument, and it is based on the assumption his was a custodial interrogation. He does not present law or argument showing why his hospital interview constitutes a custodial interrogation. Notwithstanding, we conclude based on the record evidence on this issue, Appellant was not subject to a custodial interrogation such that a reasonable person under the circumstances would have not felt free to leave. Thus, suppression was not warranted and there was no prejudice.

**{¶66}** *Miranda* rights are derived from the Fifth Amendment's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). A waiver of *Miranda* rights is required prior to a custodial interrogation. *Id.* at 479; *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997).

> In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt he or she was not at liberty to terminate the interview and leave. *Thompson v. Keohane* (1995), 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383. Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry" of whether there was a " 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275, quoting *Oregon v. Mathiason,* 429 U.S. at 495, 97 S.Ct. 711, 50 L.Ed.2d 714.

*State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27

**{¶67}** *Miranda* warnings are generally not required during a police officer's roadside questioning of a driver at the scene of an accident "because the questioning constitute[s] on-scene questioning done as part of the normal fact-finding process and not custodial interrogation." *State v. Garland*, 116 Ohio App.3d 461, 470, 688 N.E.2d 557 (12ᵗʰ Dist.1996).

**{¶68}** Courts have employed certain factors a court should examine when applying the reasonable person test including:

> "'whether the encounter takes place in surroundings that are familiar to the suspect; the number of law enforcement officers present, as well as their conduct and demeanor; the degree of physical restraint imposed; and the duration and character of the interrogation.' " *State v. Magnone*, 2016-Ohio-7100, 72 N.E.3d 212, ¶ 23 (2d Dist.), quoting *State v. Farrell*, 2d Dist. Miami No. 99-CA-24, 1999 WL 812249, *3 (Oct. 8, 1999). Other factors that may be considered are: 1) the location where the questioning took place; 2)

whether the defendant was a suspect when the interview began; 3) any restrictions on the defendant's freedom to leave; 4) whether the defendant was handcuffed or was told he was under arrest; 5) whether threats were made during the interrogation; 6) whether the defendant was physically intimidated during the interrogation; 7) whether the police verbally dominated the interrogation; 8) the defendant's purpose for being at the location of the questioning; 9) whether neutral parties were present at any point during the questioning; and 10) whether police took any action to overpower, trick, or coerce the defendant into making a statement. [*State v. Estepp*, 2d Dist. Montgomery No. 16279, 1997 WL 736501, *4 (Nov. 26, 1997)].

*State v. Ward*, 2023-Ohio-328, 208 N.E.3d 143, ¶ 25 (2nd Dist.).

**{¶69}** As for the totality of the circumstances presented to the court at trial, the evidence shows Appellant was transported to the hospital by the paramedics to receive medical treatment. Vinca testified they were in a hurry to transport him because he sustained serious injuries. He was not in his room when Vinca arrived, and she waited for him there. There is nothing indicating he was not free to leave or his physical liberty was restrained other than by his need to secure medical treatment. When asked for a urine sample, he declined. The interview likely lasted no longer than it took Vinca to ask and write out the ten questions and answers listed in State's Exhibit One.

**{¶70}** There is nothing evidencing whether Vinca was physically intimidating or if she attempted to coerce Appellant into providing a statement. No evidence shows he was advised he was under arrest, he was ordered to answer the questions, or he was handcuffed. There is also nothing tending to show if neutral parties were in the room during the interview.

**{¶71}** There is nothing showing his liberty was restrained or he was advised he was not free to leave. The Second Appellate District has held a hospital is a place an individual would normally feel free to leave, and an individual's confinement to a hospital bed is not the same restraint on one's freedom generally associated with a formal arrest. *State v. Ward*, 2023-Ohio-328, 208 N.E.3d 143, ¶ 26-28 (2nd Dist.) (finding a hospital interview did not constitute custodial interrogation).

{¶72} Further, it appears the questions asked of Appellant at the hospital were those that would have been asked at the scene of the accident as part of Vinca's preliminary investigation had Appellant not needed urgent medical care. Based on the limited facts in evidence, we decline to find a reasonable person in Appellant's position would have felt he was not at liberty to terminate the interview and leave.

{¶73} Even if Appellant's counsel had moved to suppress the statements he made at the hospital, we cannot say the motion would have been successful. Because we conclude this interview was not "custodial" as that term has been defined, such that Appellant should have been advised of his *Miranda* rights, we decline to find error based on his attorney's failure to file a suppression motion.

{¶74} As for Appellant's contention that Trooper Vinca conducted the interview out of her jurisdiction, which warranted suppression, he directs our attention to several cases for the proposition an officer lacks authority to *arrest* in another state and generally lacks authority to arrest outside the officer's jurisdiction. However, Appellant does not provide legal authority showing it is illegal for an Ohio officer to conduct an investigatory interview in another state or outside her jurisdiction.

{¶75} An officer's authority to detain and arrest is dictated by statute and caselaw. Yet, Appellant does not identify similar authority governing an officer's power to *interview* a suspect or motorist involved in an accident outside that officer's jurisdiction. Thus, Appellant fails to show a violation of his constitutional rights, and as such, there was no prejudice from his counsel's alleged failure to file a motion to suppress. *State v. Weideman*, 94 Ohio St.3d 501, 504, 764 N.E.2d 997 (2002), quoting *Kettering v. Hollen*, 64 Ohio St.2d 232, 234-235, 416 N.E.2d 598 (1980) (the exclusionary rule is usually only applied when there are violations of a constitutional nature).

{¶76} Appellant's second issue under this assigned error claims his attorney was ineffective for not objecting to the admission of Appellant's statement in State's Exhibit One. He claims it violates Crim.R. 12(E) and 16 because the state allegedly failed to disclose Appellant's statement was made during a custodial interrogation outside of Ohio. Appellant's argument is not that he was not provided a copy of his statement, but instead only that it was undisclosed until trial that he was given his *Miranda* rights while

hospitalized after the accident.  As stated, however, the facts in evidence showed Vinca did <u>not</u> read Appellant his *Miranda* rights.

**{¶77}** Further, the state points out Appellant was given his Traffic Crash Statement or State's Exhibit One via discovery, and Appellant agrees with this contention in his appellate brief as well.  Accordingly, Appellant's second argument under his third assigned error lacks merit.

**{¶78}** Appellant's third assignment of error lacks merit in its entirety and is overruled.

Conclusion

**{¶79}**  Appellant fails to demonstrate error on appeal, and his assignments of error lack merit.  Accordingly, the trial court's stay is lifted and Appellant's conviction and sentence affirmed.


Waite, J., concurs.

Hanni, J., concurs.


<u>Case No. 23 BE 0009</u>

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and the trial court's stay is lifted. The final judgment and order of the Belmont County Court – Northern Division of Belmont County, Ohio is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**