[Cite as *State v. Harper*, 2024-Ohio-413.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JEFFREY L. HARPER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CO 0023**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2021 CR 232

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Judges,
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor, and *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Christopher P. Lacich,* Roth, Blair, for Defendant-Appellant.

Dated: February 5, 2024

**HANNI, J.**

{¶1}   Defendant-Appellant, Jeffrey L. Harper, appeals from a Columbiana County Common Pleas Court judgment convicting him of operating a motor vehicle under the influence of alcohol or drugs (OVI) and driving with a suspended license, following a bench trial.

{¶2}   On January 9, 2021, State Highway Patrol Trooper Isaac Garlough was travelling west on Route 62 in West Township, Columbiana County at approximately 1:11 a.m.   The trooper observed a vehicle approaching him travelling east on Route 62. Trooper Garlough clocked the vehicle traveling at 66 miles per hour.  The posted speed limit was 55 miles per hour.  The trooper followed the vehicle and stopped it.

{¶3}   Appellant was operating the vehicle.  When Trooper Garlough made contact with Appellant, he immediately noticed an odor of an alcoholic beverage.  The trooper informed Appellant he had stopped him for speeding and Appellant admitted he was "a little bit over" on his speed.  The trooper noticed that Appellant had some difficulty locating his identification in his wallet and that his eyes appeared to be bloodshot.  When asked if he had anything to drink, Appellant first told Trooper Garlough "not really."   Later, however, Appellant told the trooper he had two glasses of wine with dinner an hour or two ago.

{¶4}   When Appellant exited his vehicle, the trooper noticed Appellant could not walk in a straight line.  Trooper Garlough then asked Appellant to submit to field sobriety tests.  On the horizontal gaze nystagmus (HGN) test, the trooper observed six out of six clues indicating impairment.   He also observed multiple clues of impairment when Appellant performed the walk-and-turn test.  Appellant refused to perform the one-leg-stand test.   The trooper also administered a portable breath test, which registered Appellant's breath alcohol concentration (BAC) at .295.   The legal BAC limit in Ohio is .08.  The trooper then placed Appellant under arrest for OVI and transported him to the State Highway Patrol Post.

{¶5}   At the post, Trooper Garlough administered the Intoxilyzer 8000 breath test. The test indicated Appellant had a BAC of .161.  The trooper also obtained Appellant's criminal history from the dispatcher.  He learned that Appellant was under three driver's

license suspensions and had previous felony OVI convictions, the most recent being less than two months prior.

{¶6} On May 12, 2021, a Columbiana County Grand Jury indicted Appellant on one count of OVI in violation of R.C. 4511.19(A)(1)(d), a third-degree felony; one count of OVI in violation of R.C. 4511.19(A)(1)(a), a third-degree felony; and driving under suspension, a first-degree misdemeanor in violation of R.C. 4510.11(A). The indictment indicated that the OVI counts were elevated to third-degree felonies based on Appellant's prior felony OVI convictions.

{¶7} After several continuances and a change in counsel, the matter proceeded to a bench trial on March 6, 2023. Trooper Garlough was the sole witness. The trial court found Appellant guilty as charged. The court then set the matter for a sentencing hearing.

{¶8} At the sentencing hearing, the trial court found that the two OVI counts merged for purposes of sentencing. The trial court then sentenced Appellant to 24 months in prison for OVI and 180 days in jail for driving under suspension, to be served concurrently. The court also imposed a mandatory fine of $1,350 and a lifetime driver's license suspension.

{¶9} Appellant filed a timely notice of appeal on April 21, 2023. He now raises three assignments of error.

{¶10} Appellant's first assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND AN ABUSE OF DISCRETION WHEN IT FAILED TO GRANT THE APPELLANT'S MOTION FOR CONTINUANCE ON THE MORNING OF HIS BENCH TRIAL, AND WITH NO OBJECTION, PLAIN ERROR IS IMPLICATED.

{¶11} The trial court held a status conference on February 23, 2023. Appellant's trial was set for March 6, 2023. Appellant requested a continuance of his trial. Counsel informed the court that Appellant was currently undergoing an eight-week treatment program for Hepatitis C and Appellant had blood work scheduled, along with a potential CAT scan, in regard to a suspected pancreas issue. The trial court denied the continuance. It reasoned that Appellant's issues were "longstanding chronic problems that are not likely to be resolved * * * in the near future." (Feb. 23, 2023 Tr. 3).

Case No. 23 CO 0023

{¶12} Appellant argues the trial court both abused its discretion and committed plain error when it denied his request for a continuance. He asserts he had a lot on his mind due to his medical issues and the court had a "lack of humanity."

{¶13} We review a trial court's judgment denying a motion to continue for an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), at the syllabus. Abuse of discretion implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶14} In determining whether the trial court abused its discretion in denying a requested continuance, we should consider: (1) the length of the delay requested; (2) whether other continuances have been requested and granted; (3) the inconvenience to the parties, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance giving rise to the request for a continuance; and (6) any other relevant factors. *Unger*, 67 Ohio St.2d at 67-68.

{¶15} In this case, in requesting a continuance, Appellant cited his current medical issues, which included an eight-week Hepatitis treatment and a pancreas issue. He did not indicate that either of these conditions would prevent him from attending the trial scheduled for March 6, 2023. He did not provide the court with appointment dates that might interfere with the scheduled trial. And he was well enough to attend the February 23, 2023 status conference. Appellant did not indicate how long he wished to continue the trial.

{¶16} Additionally, by the time he requested the continuance, Appellant's case had been pending for almost two years. The continuances were attributable to the death of a judge, Appellant's request for a continuance, a sanity evaluation, and the withdrawal of Appellant's counsel and appointment of new counsel.

{¶17} Based on the above, we cannot conclude that the trial court abused its discretion in denying Appellant's requested continuance. There was nothing preventing Appellant from attending his scheduled trial. He was well enough to proceed with the pretrial and trial process. As the court noted, it appeared Appellant's health conditions were chronic and longstanding, so they would not be soon resolved. And Appellant was

requesting an indefinite continuance. Moreover, the case had been pending for almost two years, with the court having granted several continuances already.

{¶18} Accordingly, Appellant's first assignment of error is without merit and is overruled.

{¶19} Appellant's second assignment of error states:

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY HIS FAILURE TO OBJECT TO THE TRIAL COURT'S DENIAL OF THE MOTION TO CONTINUE THE TRIAL DUE TO APPELLANT'S MEDICAL CONDITION AND BY FAILING TO FILE A MOTION TO SUPPRESS EVIDENCE (OVI TEST PROCEDURES).

{¶20} Here, Appellant contends his counsel was ineffective for (1) failing to object to the trial court's denial of his motion for a continuance and (2) failing to file a motion to suppress evidence.

{¶21} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id*. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

{¶22} Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id*.

{¶23} Appellant first claims his counsel was ineffective for failing to object to the trial court's denial of his motion to continue, which he claims made that alleged error subject to a plain error review. But counsel was not required to lodge another objection to the denial of his motion. And we have reviewed Appellant's assignment of error on this

claim for abuse of discretion, not plain error. Thus, Appellant cannot demonstrate prejudice. Therefore, Appellant's counsel was not ineffective on this basis.

**{¶24}** Appellant next claims his counsel was ineffective for failing to file a motion to suppress. He points out that at trial, counsel objected to the Alcohol and Drug Testing Subject Report (State's Exhibit 2) on the basis that the officer did not observe him for 20 minutes prior to giving him the Intoxilyzer test as is required by protocol. Appellant argues that his counsel was required to file a motion to suppress on this basis in order to preserve the issue.

**{¶25}** In *State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995), the Ohio Supreme Court held: "[A] defendant who does not object to the admissibility of a breath-alcohol test through a pretrial motion to suppress on the basis of a failure by the state to comply with Ohio Department of Health regulations may not object to the admissibility of the test results at trial on those grounds." The Court went on to instruct:

> The chemical test result is admissible at trial without the state's demonstrating that the bodily substance was withdrawn within two hours of the time of the alleged violation, that the bodily substance was analyzed in accordance with methods approved by the Director of Health, and that the analysis was conducted by a qualified individual holding a permit issued by the Director of Health pursuant to R.C. 3701.143. (*Defiance v. Kretz* [1991], 60 Ohio St.3d 1, 573 N.E.2d 32, approved; *Cincinnati v. Sand* [1975], 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908, modified.) This does not mean, however, that the defendant may not challenge the chemical test results at trial under the Rules of Evidence. Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised.

*Id.* at 451-452.

**{¶26}** "Courts in Ohio have generally recognized that one of the elements in a breath test is that the person being tested must be observed for twenty minutes before the test to prevent the oral intake of any material." *State v. Miller*, 3d Dist. Seneca No. 13-20-14, 2021-Ohio-4472, ¶ 8. In the present case, Appellant's counsel objected at trial

Case No. 23 CO 0023

to the admission of the Alcohol and Drug Testing Subject Report, which was the Intoxilyzer test report indicating Appellant's BAC to be .161. Counsel argued that the State failed to prove that the trooper followed the protocol of observing Appellant for 20 minutes before administering the test to ensure that he did not ingest anything. (Trial Tr. 43-44). The trial court overruled the objection. (Trial Tr. 44).

{¶27} Because Appellant's counsel failed to file a motion to suppress the Intoxilyzer test results in this case, Appellant may have been precluded from objecting to the test results on the basis that the trooper did not follow the protocol of observing Appellant for 20 minutes before administering the test. The trial court did not indicate this was the basis for overruling the objection, however.

{¶28} Nonetheless, Appellant cannot demonstrate the prejudice necessary to prove ineffective assistance of counsel. In other words, Appellant cannot show that the result of his trial would have been different had his counsel filed a motion to suppress.

{¶29} Whether or not the results of the Intoxilyzer test were admitted into evidence, the State presented ample evidence to convict Appellant of OVI.

{¶30} Trooper Garlough testified that he first noticed Appellant's vehicle travelling at a high rate of speed at approximately 1:00 a.m. (Trial Tr. 6-7). He activated his radar and found that Appellant was travelling 66 miles per hour in a 55-mile-per-hour zone. (Trial Tr. 7). The trooper activated his lights and initiated a traffic stop of Appellant's vehicle. (Trial Tr. 7). When he approached the vehicle, Trooper Garlough detected the odor of an alcoholic beverage coming from the vehicle. (Trial Tr. 8). The trooper asked Appellant for his driver's license. (Trial Tr. 8). He noticed that Appellant flipped through his wallet, passing up his license. (Trial Tr. 8). The trooper stated this was a sign of possible impairment. (Trial Tr. 9). Trooper Garlough informed Appellant that he stopped him due to his speed and Appellant acknowledged "going a little bit over" the speed limit. (Trial Tr. 10). While speaking with Appellant, the trooper noticed that Appellant's eyes were bloodshot. (Trial Tr. 10). Trooper Garlough testified that bloodshot eyes can be an indicator of impairment. (Trial tr. 10-11). He asked Appellant if he had anything to drink and Appellant stated, "not really." (Trial Tr. 10).

{¶31} At that point, the trooper asked Appellant to step out of his vehicle. (Trial Tr. 11). When Appellant exited, the trooper noticed Appellant was not able to walk in a

straight line. (Trial Tr. 11). Trooper Garlough asked Appellant to stand near his cruiser's rear wheel, but Appellant attempted to sit down instead. (Trial Tr. 12). The trooper then asked Appellant to perform three field sobriety tests. Prior to starting the HGN test, Trooper Garlough detected the odor of an alcoholic beverage coming from Appellant's breath and noticed that Appellant's speech was slurred. (Trial Tr. 14). He testified that these are both signs of impairment. (Trial Tr. 14).

{¶32} In administering the HGN test, the trooper found six of six clues indicating impairment. (Trial Tr. 14-15). In administering the walk-and-turn test, Trooper Garlough noted that Appellant moved his feet to keep his balance during the instructions, he twice started the test before being told to start, he did not walk heel-to-toe, he stepped off of the line, and he raised his hands higher than permitted. (Trial Tr. 16). The trooper testified these signs indicated impairment. (Trial Tr. 16). Trooper Garlough then offered Appellant the one-leg-stand test, which Appellant declined. (Trial Tr. 16). Appellant told the trooper he would rather take a breathalyzer test. (Trial Tr. 16). The trooper stated that he administered a portable breathalyzer test to Appellant, which gives a rough estimate of a person's BAC. (Trial Tr. 17). Trooper Garlough testified that Appellant registered a .295 BAC on the test and that the legal limit is .08. (Trial Tr. 17).

{¶33} Based on all of the above observations, Trooper Garlough opined that Appellant was impaired and placed him under arrest for OVI. (Trial Tr. 18). After placing him under arrest, Appellant told the trooper that he had consumed two glasses of wine with dinner. (Trial Tr. 19).

{¶34} As can be seen from the trooper's testimony, the trial court would have convicted Appellant of OVI even without the admission of the Intoxilyzer test results. Therefore, Appellant cannot demonstrate that, but for counsel's error, the result of the trial would have been different as is required to prevail on an ineffective assistance of counsel claim.

{¶35} Accordingly, Appellant's second assignment of error is without merit and is overruled.

{¶36} Appellant's third assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT OVERRULED THE APPELLANT'S

OBJECTIONS TO EXHIBITS 3, 4, AND 5 AS TO THEIR ADMISSIBILITY, AS WELL AS HIS RULE 29 MOTION, AND THUS HIS CONVICTIONS WERE BASED ON LEGALLY INSUFFICIENT EVIDENCE.

**{¶37}** In his final assignment of error, Appellant argues the trial court erred in admitting State's Exhibits 3, 4, and 5. Without these exhibits, Appellant claims his convictions would not be supported by sufficient evidence.

**{¶38}** A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (8th Dist.1996). Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶39}** Appellant contends that State's Exhibits 3, 4, and 5 were not properly authenticated and, therefore, should have been excluded on the basis of hearsay or failure to authenticate.

**{¶40}** State's Exhibit 3 is a copy of Appellant's driver's license information along with a history of his driver's license suspensions and OVI convictions. This information was obtained from LEADS, a law enforcement database, by Trooper Garlough the night he arrested Appellant. (Trial Tr. 28). Appellant points out that at trial his counsel objected on the basis that the LEADS printout was not generated by the trooper who testified, thus it did not have a proper foundation. (Trial Tr. 44).

**{¶41}** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible at trial. Evid.R. 802.

**{¶42}** There are various exceptions to the hearsay rule. One such exception is for public records and reports:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless

offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

Evid.R. 803(8).

**{¶43}** This Court has previously held that LEADS printouts are properly admissible under the public records exception to hearsay. *State v. Lett*, 7th Dist. Mahoning No. 08 MA 194, 2009-Ohio-5268, ¶ 22. Moreover, Trooper Garlough authenticated State's Exhibit 3. The trooper testified the LEADS printout contained Appellant's driver's license information. (Trial Tr. 28). He stated that he obtained the LEADS report on the night of this investigation and that the printout was a fair and accurate copy of the report. (Trial Tr. 28). Thus, the trial court did not abuse its discretion in admitting Exhibit 3.

**{¶44}** State's Exhibit 5 is a certified copy of Appellant's felony OVI conviction from Mahoning County dated December 7, 2020. (Trial Tr. 31). Appellant points out that his counsel objected to its admission because it did not identify Appellant by his social security number. (Trial Tr. 46).

**{¶45}** Certain documents are admissible as self-authenticating:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

(2) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

Case No. 23 CO 0023

* * *

> (4) Certified Copies of Public Records.  A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any law of a jurisdiction, state or federal, or rule prescribed by the Supreme Court of Ohio.

Evid.R. 902(1)(2)(4).

{¶46}  Exhibit 5 is a certified copy of a judgment entry.  It contains a raised seal from the Mahoning County Common Pleas Court and is signed by a deputy clerk.  Thus, it meets the self-authentication requirements of Evid.R. 901(1).  Moreover, while it does not identify Appellant by social security number, the conviction is corroborated by the LEADS report for Appellant.  Thus, the trial court did not abuse its discretion in admitting Exhibit 5.

{¶47}  State's Exhibit 4 is a copy of Appellant's felony OVI conviction from Stark County dated October 16, 2006.  (Trial Tr. 32).  Appellant notes that his counsel objected to its admission on the basis that it did not have a raised seal.  (Trial Tr. 44-45).

{¶48}  State's Exhibit 4 is a photocopy of a judgment entry from Stark County Common Pleas Court convicting and sentencing Appellant for felony OVI on October 16, 2006.  It is not an original nor does it have a raised seal to certify it.  It contains a stamp indicating:  "A TRUE COPY TESTE:  LYNN M. TODARO, CLERK" and it is then signed by a deputy clerk and dated April, 27, 2021.  But this is not an original stamp and signature; the judgment entry is a photocopy.  Thus, the trial court may have abused its discretion in admitting Exhibit 4 into evidence.

{¶49}  But any error here is harmless.  "An offender who previously has been convicted of or pleaded guilty to a violation of division (A) of this section that was a felony, regardless of when the violation and the conviction or guilty plea occurred, is guilty of a felony of the third degree."  R.C. 4511.19(G)(1)(e).  "When the existence of a prior conviction affects the degree of the offense and not just the punishment available upon

conviction, it is an essential element of the offense." *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 11. Thus, the State was required to prove that Appellant had previously been convicted of or pleaded guilty to a single felony OVI. It was not, however, required to prove that Appellant had been convicted of more than one felony OVI.

**{¶50}** Because Exhibit 5 was properly certified and admitted and because Exhibit 5 demonstrated that Appellant was previously convicted of a felony OVI, the State provided the evidence necessary to elevate Appellant's OVI conviction to a third-degree felony. Thus, even without Exhibit 4, the evidence was sufficient to convict Appellant of third-degree felony OVI.

**{¶51}** Accordingly, Appellant's third assignment of error is without merit and is overruled.

**{¶52}** For the reasons stated above, the trial court's judgment is hereby affirmed.


Robb, P.J., concurs.

Klatt, J., concurs.

**[Cite as *State v. Harper*, 2024-Ohio-413.]**

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**