[Cite as *State v. Morgan*, 2025-Ohio-1312.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOHN EUGENE MORGAN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0040**

---

Application to Reopen

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Denied.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor, *Atty. Ralph M. Rivera* and *Atty. Kristie M. Weibling*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee and

*Atty. Rhys B. Cartwright-Jones*, for Defendant-Appellant.

Dated: April 9, 2025

**PER CURIAM.**

**{¶1}** On March 10, 2025, Appellant, John Eugene Morgan, filed an App.R. 26(B) application to reopen his direct appeal in *State v. Morgan*, 2024-Ohio-5843 (7th Dist.). Also on that same date, Appellant filed a "Motion To Confirm Warrant And Affidavit As Part Of Record Or, Alternatively, To Include Warrant And Affidavit In Record For Review Of Reopened Appeal." Upon review, this court confirms that the August 3, 2022 "Search Warrant," the August 3, 2022 "Affidavit," and the August 3, 2022 "Receipt/Inventory" are included in the record. (State's Exhibit 54). Appellee, the State of Ohio, filed a response.

**{¶2}** Appellant was convicted of felonious assault, and voluntary manslaughter and murder (merged), and sentenced to a total of 18 years to life in prison following a jury trial. In Appellant's direct appeal, appellate counsel asserted Appellant's convictions of voluntary manslaughter and murder were not supported by the manifest weight of the evidence. Appellate counsel also alleged the jury instructions regarding the at fault component of self-defense were confusing and misleading thereby causing the jury to misapply the law. This court found no merit in either argument and affirmed the trial court's judgment on December 12, 2024. *Morgan* at ¶ 1, 69.

> App.R. 26(B)(1) and (2)(b) require applications to reopen based on ineffective assistance of appellate counsel to be filed within ninety days from journalization of the decision. App.R. 26(B)(1), (2)(b); *State v. Gumm*, 103 Ohio St.3d 162, 2004-Ohio-4755, 814 N.E.2d 861. The ninety-day requirement applies to all appellants. *State v. Buggs,* 7th Dist. Mahoning Nos. 06 MA 28, 07 MA 187, 2009-Ohio-6628, ¶ 5.

> If an application for reopening is not filed within the ninety day time period, an appellant must make a showing of good cause justifying the delay in filing. *State v. Dew,* 7th Dist. Mahoning No. 08 MA 62, 2012-Ohio-434.

*State v. Frazier*, 2020-Ohio-993, ¶ 5-6 (7th Dist.).

**{¶3}** As stated, Appellant's application for reopening was filed on March 10, 2025. Therefore, his application is timely as it was filed within the 90-day timeframe of this court's December 12, 2024 decision. *Morgan*, 2024-Ohio-5843 (7th Dist.); App.R.

26(B)(1) and (2)(b). Upon review, however, Appellant fails to meet the standard for reopening this appeal. *See State v. Romeo*, 2018-Ohio-2482, ¶ 6 (7th Dist.).

Claims of ineffective assistance of appellate counsel under App.R. 26(B) are subject to the two-pronged analysis enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See State v. Simpson*, 164 Ohio St.3d 102, 2020-Ohio-6719, 172 N.E.3d 97, ¶ 14, *Id.* at ¶ 23 (O'Connor, C.J., concurring), *Id.* at ¶ 28 (Fischer, J., concurring); *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996); *see also* 1993 Staff Notes to App.R. 26 ("The term 'ineffective assistance of counsel' is intended to comprise the two elements set forth in *Strickland*").

In accordance with the *Strickland* analysis, an applicant must show that (1) appellate counsel's performance was objectively unreasonable, *id.* at 687, 104 S.Ct. 2052, and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See Smith v. Robbins*, 528 U.S. 259, 285-286, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). . . .

*State v. Leyh*, 2022-Ohio-292, ¶ 17-18.

Under App.R. 26(B), an applicant must set forth "[o]ne or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation." App.R. 26(B)(2)(c).

*State v. Hackett*, 2019-Ohio-3726, ¶ 9 (7th Dist.).

[Furthermore] [i]t should finally be noted that appellate counsel need not raise every possible issue in order to render constitutionally effective assistance. [*State v.*] *Tenace,* 109 Ohio St.3d 451 at ¶ 7, 849 N.E.2d 1, citing *State v. Sanders* (2002), 94 Ohio St.3d 150, 151-152, 761 N.E.2d 18. "Experienced advocates since time beyond memory have emphasized the

Case No. 24 MA 0040

importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes* (1983), 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987.

*State v. Jones*, 2008-Ohio-3352, ¶ 6 (7th Dist.).

**{¶4}** In Appellant's direct appeal, this court stated the following:

. . . Appellant's convictions of voluntary manslaughter and murder (merged) are not against the manifest weight of the evidence. Although the State only needed to disprove any one of the three elements of Appellant's self-defense claim beyond a reasonable doubt, all three elements were disproven as revealed in the record.

. . .

Appellant's position that he acted in self-defense belies the record in this case. Appellant voluntarily entered into the encounter by going to D.P.'s house and remaining where he was not permitted to be. Appellant was the initial aggressor and began the physical altercation by firing a warning shot before striking the first blow. The record reveals Appellant violated his duty to retreat. Appellant fired a gunshot into D.P.'s back when any imminent threat to Appellant had already ended.

Regarding the first element, Appellant was at fault for creating the situation giving rise to the affray. . . .

. . .

Regarding the second element, Appellant did not have a bona fide belief that he was in imminent danger of death or great bodily harm at the time that he killed D.P. by shooting him in the back as D.P. was running away. In fact, Appellant admitted at the jury trial that D.P. did not pose any imminent threat to him and Appellant was not in any danger at the time he shot D.P. in the back and killed him. . . .

. . .

Regarding the third and final element, . . . the facts presented and the record from the jury trial reveal Appellant was not in a place that he was lawfully permitted to be when he shot and killed D.P. The testimony establishes Appellant had no legal right to be at D.P.'s house on the day of the incident and, in fact, was specifically instructed not to go there. . . .

. . .

. . . [T]he jury chose to believe the State's witnesses. [*State v.*] *DeHass,* 10 Ohio St.2d [230] at paragraph one of the syllabus [(1967)]. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of voluntary manslaughter and murder (merged). [*State v.*] *Thompkins,* 78 Ohio St.3d [380] at 387 . . . [(1997)].

. . .

Appellant admits he did not object to the jury instructions at trial and admits the jury instructions that were given were a correct statement of the law. Nevertheless, Appellant believes the jury instructions misled the jury.

. . .

The jury instructions given here were a correct statement of the law as they followed the OJI on self-defense.

. . .

The trial court properly followed the OJI and instructed the jury as to every element of self-defense . . .[.]

. . .

Based on the foregoing, the two juror affidavits attached to Appellant's motion for leave to file a motion for new trial claiming they did not understand the jury instructions regarding the at fault component of self-defense are prohibited under [*State v.*] *Jordan*, [2009-Ohio-6152 (11th Dist.)], [*State v.*] *Paige*, [1994 WL 78223 (8th Dist. March 10, 1994)], and Evid.R. 606(B). . . .

*Morgan*, 2024-Ohio-5843, at ¶ 41-43, 45, 47, 51, 54, 56-57, 67 (7th Dist.).

{¶5} Appellant raises four assignments of error in his application to reopen:

1. Counsel's failure to object to the self-defense jury instruction, thereby forfeiting a critical appellate challenge, constitutes reversible error under *Strickland v. Washington.*

2. Counsel's failure to file a motion to suppress the dash-cam evidence, thereby forfeiting a critical appellate challenge, constitutes reversible error under *Strickland v. Washington.*

3. Counsel's failure to raise the issue of whether felonious assault serves as a predicate offense for felony murder, thereby forfeiting a critical appellate challenge, constitutes reversible error under *Strickland v. Washington.*

4. Counsel's cumulative inaction in preserving these errors, thereby denying the appellant a full and fair appellate review, constitutes reversible error under *Strickland v. Washington.*

(3/10/2025 Appellant's Motion to Re-open Appeal, p. 1-2).

{¶6} Regarding Appellant's first assignment, trial counsel's tactical decision not to object to the self-defense jury instruction is not ineffective assistance.

{¶7} "The failure to raise an objection alone is not enough to sustain a claim of ineffective assistance of counsel." *State v. Blake*, 2023-Ohio-2748, ¶ 48 (7th Dist.), citing *State v. Conway*, 2006-Ohio-791, ¶ 168.

**{¶8}** In his direct appeal, Appellant claimed the self-defense jury instruction given by the trial court was confusing and misleading. Although trial counsel did not object to this jury instruction during the trial, this court fully considered and rejected Appellant's claim under the plain error doctrine. *Morgan*, 2024-Ohio-5843, at ¶ 53-68 (7th Dist.). This court held that "[t]he trial court properly followed the OJI and instructed the jury as to every element of self-defense[.]" *Id.* at ¶ 57. In addition, this court determined:

> Even assuming arguendo there was error in the escalation component of the instructions and even assuming that D.P. and/or Junior escalated the situation, Appellant's self-defense claim still fails. As addressed, although the State only needed to disprove any one of the three elements of Appellant's self-defense claim beyond a reasonable doubt, all three elements were disproven as revealed in the record. The State disproved, and Appellant admitted, that he was not under any imminent threat at the time of the shooting. Also, the facts presented and the record from the jury trial reveal Appellant was not in a place that he was lawfully permitted to be when he shot and killed D.P. We fail to find any plain error.

*Id.* at ¶ 67.

**{¶9}** Appellant's first assignment of error is not well-taken.

**{¶10}** Regarding Appellant's second assignment, trial counsel's decision not to file a motion to suppress the dash cam video is not ineffective assistance constituting reversible error under *Strickland* based on the facts presented in this case.

> The failure to pursue a motion to suppress does not automatically constitute ineffective assistance of counsel. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). To establish ineffective assistance of counsel for failure to pursue a motion to suppress, a defendant must show the motion to suppress had a reasonable probability of success on the merits and there is a reasonable probability the result of the trial would have been otherwise had the motion been granted. *State v.*

*Ash*, 2018-Ohio-1139, 108 N.E.3d 1115, ¶ 22 (7th Dist.), citing *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 94.

*State v. Bruce*, 2023-Ohio-4719, ¶ 60 (7th Dist.).

**{¶11}** The August 3, 2022 "Receipt/Inventory" specifically lists the dash cam, whereas the August 3, 2022 "Search Warrant" and "Affidavit" do not. *See* (State's Exhibit 54). The "Search Warrant" lists the following: "9mm shell casings or any other ammunition, firearms, or instrumentalities of the crimes described above or other evidence, or instrumentalities of this or any other offense." (*Id.*) In reference to the vehicle, the "Search Warrant" further states: "Officers may seize any ammunition or 9mm shell casings or instrumentalities of the crimes described above." (*Id.*) Like the "Search Warrant," the "Affidavit" lists the following: "9mm shell casings or any other ammunition, firearms, or instrumentalities of the crimes described above or other evidence, or instrumentalities of this or any other offense." (*Id.*)

**{¶12}** In his application to reopen, Appellant stresses:

> Counsel neglected to challenge the critical discrepancy between the date noted in the warrant affidavit and the metadata from the dash-cam evidence. The affidavit records a date that appears after the dash-cam data pull, while the metadata indicates an earlier extraction date. . . .
>
> . . .
>
> Counsel also failed to challenge deficiencies in the warrant that authorized the extraction of dash-cam evidence. The warrant, issued on August 3, 2022, lacks express authorization to seize the dash-cam from the appellant's vehicle[.] …
>
> . . .
>
> Counsel's overall failure to pursue a motion to suppress the dash-cam evidence has imposed material prejudice on the appellant. . . .

(3/10/2025 Appellant's Motion to Re-open Appeal, p. 10-11).

Case No. 24 MA 0040

{¶13} It appears Appellant advances good arguments in support of his position that a motion to suppress the dash cam evidence should have been filed. However, this court stresses that even without the dash cam video, the testimony at trial supports Appellant's conviction establishing that he did not act in self-defense, as addressed in our December 12, 2024 decision:

> A jury trial commenced on February 20, 2024.
>
> There is no question that Appellant killed the victim, D.P., Sr. In fact, Appellant admitted that he killed D.P. when he shot him in the back. The only question presented at the jury trial was whether the killing was done in self-defense. . . .
>
> Kaitlynn Morgan testified for Appellee, the State of Ohio, that Appellant is her father and Mary Morgan is her mother. Although Appellant was legally married to Mary, Mary was D.P.'s girlfriend. Kaitlynn resided at D.P.'s home. On the day of the incident, July 31, 2022, Kaitlynn planned to go with her two-year-old son and Appellant to eat Sunday dinner at her brother's. Kaitlynn texted Appellant that she was ready for him to pick them up at D.P.'s house. D.P. and Mary became upset after finding out that Appellant was coming to their home, so Kaitlynn asked Appellant to pick her up on a street corner a few houses away. Appellant texted her back saying that he was going to D.P.'s house.
>
> Kaitlynn did not immediately see Appellant's text message so she walked to the corner as planned. When she saw Appellant's car heading towards D.P.'s house, Kaitlynn walked back towards D.P.'s house and saw Appellant turn into the driveway. She then saw D.P. come off of the porch towards Appellant before losing sight of the two men. She heard a scuffle and eventually a gunshot.
>
> D.P.'s son, D.P., Jr. ("Junior"), testified for the State that he witnessed his father being murdered by Appellant. Junior was home at the

time watching television when he heard a gunshot. Junior ran outside and saw D.P. fighting with Appellant. Junior jumped in to help D.P. because Appellant had a gun and was double his father's size. D.P. told Junior to go and Junior ran off. The next thing Junior recalled was hearing his father say that he had been shot.

Mary testified for the State that although she was still legally married to Appellant, they had separated in 2019. Their relationship was not good following the separation. About a month or two before the incident, Mary recalled that Appellant was trying to get in touch with her. Mary neither accepted Appellant's call nor returned his text messages. D.P. learned that someone was trying to contact Mary and asked her if he could call the person back. Mary consented and was present during the call in which both D.P. and Appellant threatened each other. Appellant told Mary and D.P. that he was going to beat up D.P.

Regarding the day of the incident, Mary testified that Kaitlynn informed her and D.P. that Appellant was coming to pick her up. Mary and D.P. became angry because neither of them wanted Appellant at the house. Appellant had a short fuse and Mary was concerned about what he might do to D.P. Thus, Kaitlynn made arrangements to meet Appellant a few houses down the street at a nearby corner.

Mary went in the house while D.P. was on the porch. She heard a tire squeal and D.P. using an expletive that Appellant brought a gun. Mary then heard a single gunshot. She saw Appellant with a gun and ran outside. Mary saw D.P. and Junior running. She then saw Appellant point the gun at D.P.'s back and shoot D.P. in the back. Appellant told Mary that it was all her fault. Mary ran over to D.P., who had dropped to his knees, and she began praying. She started CPR and called 911. (State's Exhibit 58). D.P.'s autopsy confirmed Mary's observations, i.e., that D.P. was shot once in the back with the bullet going through his body before exiting through his chest.

Officer David Hilliard with the Youngstown Police Department ("YPD") testified for the State that he was the first officer to arrive at the scene. He found Appellant with his hands in the air and a holster strapped to his waistband.

Officer Robert Giovanni with the YPD testified for the State that when he arrived, he found D.P. on his back with a gunshot wound to his torso. He could immediately tell that D.P., although alive at the moment, was not going to survive.

Detective Anthony Vitullo with the YPD testified for the State that he was assigned as the lead detective in this case. As part of his investigation, he conducted an interview with Appellant. They discussed the telephone call Appellant had with D.P. prior to the incident. Appellant told the detective that it was fun messing with D.P. by getting him more and more angry. Appellant also told D.P. that he and Mary were still engaged in a sexual relationship. Appellant acknowledged that Kaitlynn asked him to pick her up on the corner. Appellant refused to do so and was determined to go to D.P.'s house.

Appellant told Detective Vitullo that D.P. ran off the porch when he saw him pull in the driveway which made Appellant get out of his car and draw his gun. Appellant claimed the gun went off on its own before D.P. punched him. Appellant indicated he was on the ground and getting beaten up when he noticed the gun on the ground. Appellant then rolled over, grabbed the gun, and shot D.P. Appellant confirmed he was attempting to shoot D.P. Appellant further said the gun jammed as he was attempting to fire additional shots.

During the interview, Detective Vitullo did not notice any serious injuries on Appellant, only some minor redness. Appellant did not ask for any medical treatment. The detective also spoke about recorded calls Appellant made while in jail. During one of the calls, Appellant admitted he

was wrong for shooting D.P. and was not sure if he was being beaten up when he shot him.

. . .

On cross-examination, Appellant admitted he could have pulled his car out of the driveway when he saw D.P., believing D.P. was aggressive, but he did not. Appellant admitted that before he hit D.P., he first pointed the gun at him. Appellant clarified that when he was pointing the gun at D.P., just before killing him, he saw D.P.'s back. Appellant admitted that when he pulled the trigger, D.P. did not pose any threat to him. Appellant further admitted that after shooting D.P. in the back, he retook his aim but claimed he did not attempt further shots despite what he told police officers earlier.

*Morgan*, 2024-Ohio-5843, at ¶ 3-15, 27 (7th Dist.).

**{¶14}** Accordingly, the failure to file a motion to suppress the dash cam evidence does not amount to "a reasonable probability the result of the trial would have been otherwise had the motion been granted" as the testimony at trial supports Appellant's conviction establishing that he did not act in self-defense when he shot and killed D.P. in the back. *Bruce*, 2023-Ohio-4719, at ¶ 60 (7th Dist.); *Morgan* at ¶ 3-15, 27 (7th Dist.); *see also State v. Harper*, 2024-Ohio-413, ¶ 28 (7th Dist.). ("Appellant cannot demonstrate the prejudice necessary to prove ineffective assistance of counsel. In other words, Appellant cannot show that the result of his trial would have been different had his counsel filed a motion to suppress.")

**{¶15}** Appellant's second assignment of error is not well-taken.

**{¶16}** Regarding Appellant's third assignment, felonious assault is a predicate offense to felony murder.

Felonious assault, R.C. 2903.11, can serve as a predicate offense for a felony-murder charge. A person commits felonious assault when one "knowingly" causes "serious physical harm to another . . ." R.C. 2903.11(A)(1). "[T]aken together, a person commits felony murder with a felonious-assault predicate when he or she knowingly causes serious

Case No. 24 MA 0040

physical harm to another and that conduct is the proximate cause of another's death." *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 9.

*State v. Pennington*, 2024-Ohio-5681, ¶ 80 (4th Dist.).

**{¶17}** Appellant was convicted of felonious assault and voluntary manslaughter and murder (merged). Felonious assault is a predicate offense to felony murder. *Id.* This court found Appellant's convictions were supported by the manifest weight of the evidence. *Morgan*, 2024-Ohio-5843, at ¶ 41, 51 (7th Dist.).

**{¶18}** Appellant's third assignment of error is not well-taken.

**{¶19}** Regarding Appellant's fourth assignment, his cumulative error claim is not supported by the record or law.

Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of error during a trial deprives a defendant of a fair trial even though each of the alleged instances of error do not individually constitute cause for reversal. *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). An error-free, perfect trial does not exist, and is not guaranteed by the Constitution. *State v. Hill,* 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996). In order to find cumulative error, a record must contain multiple instances of harmless error. *State v. Austin,* 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 64. When an appellate court determines no error has occurred, the doctrine cannot apply. *State v. Lyons,* 7th Dist. Jefferson No. 16 JE 0008, 93 N.E.3d 139, 2017-Ohio-4385, ¶ 46.

*State v. Italiano*, 2021-Ohio-1283, ¶ 35 (7th Dist.).

**{¶20}** As we find no error in any of Appellant's assignments of error, this assignment based on cumulative error clearly has no merit. *Id.*

**{¶21}** Appellant's fourth assignment of error is not well-taken.

**{¶22}** Upon consideration, we fail to see any ineffective assistance of appellate counsel warranting a reopening. Accordingly, Appellant's App.R. 26(B) application for reopening is hereby denied.

Case No. 24 MA 0040

**JUDGE KATELYN DICKEY**

**JUDGE CAROL ANN ROBB**

**JUDGE MARK A. HANNI**

<u>**NOTICE TO COUNSEL**</u>

**This document constitutes a final judgment entry.**