[Cite as *State v. Morgan*, 2026-Ohio-1296.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOHN EUGENE MORGAN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0082

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CR 00438

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor, and *Atty. Kristie M. Weibling*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Rhys Brendan Cartwright-Jones*, for Defendant-Appellant

Dated: April 9, 2026

**WAITE, P.J.**

{¶1} Appellant John Eugene Morgan appeals an August 18, 2025 judgment entry of the Mahoning County Court of Common Pleas overruling his postconviction petition. On appeal, Appellant argues that he provided affidavits that establish evidence de hors the record to support his arguments that dash camera footage was improperly admitted at trial, a search warrant was improperly granted, and that jury instructions provided at his trial were erroneous. Because Appellant has already raised some of his claims in prior appeals, and could also have raised his other claims, he is barred by *res judicata* from asserting them, here. Consequently, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} This matter involves a postconviction petition. Appellant was arrested and convicted after an April 9, 2024 indictment charged Appellant with three offenses: murder, an unclassified felony in violation of R.C. 2903.02(A), (D) and 2929.02(B); murder, an unclassified felony in violation of R.C. 2903.02(B) (D), and 2929.02(B); and felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(2) and (D)(1)(a). Each count carried an attenuated firearm specification.

{¶3} This case arose following a shooting. While all of the facts are not relevant, here, Appellant admittedly shot and killed a man during a fight. *State v. Morgan,* 2024-Ohio-5843, ¶ 14 (7th Dist.) ("*Morgan I*"). The victim, D.P., was in a relationship with Appellant's wife. While Appellant constantly referred to her as his ex-wife, they had not legally divorced. On the day in question, Appellant made arrangements to pick up the daughter he shared with his ex-wife. *Id.* at ¶ 5. After learning of a contentious phone call

that had occurred between Appellant and D.P., Appellant's daughter asked him to pick her up on a street corner a few houses down from the victim's home to avoid any confrontations. Appellant refused, and responded that he intended to pick her up at D.P.'s house, where his ex-wife and daughter resided.

{¶4} After Appellant arrived, he and D.P. immediately began arguing. Appellant had a gun on his person and at one point, D.P. noticed the gun and began running. As D.P.'s back was turned to Appellant and D.P. was running away, Appellant fired a shot at him, striking him in the back and killing him. At the point of impact, D.P. had run several car lengths away from Appellant. *Id.* at ¶ 17.

{¶5} Apparently, Appellant's own dash camera, which is at issue in this appeal, recorded the event. *Id.* at ¶ 16. This video, along with witness testimony, corroborated that Appellant brought the gun, fired a "warning shot," engaged in an altercation, and then shot D.P. in the back as he ran away.

{¶6} At trial, Appellant argued that he acted in self-defense. However, he was convicted of the lesser included offense of voluntary manslaughter (count one, originally a charge of murder), murder (count two), and felonious assault. The jury also convicted him on all attenuated firearm specifications.

{¶7} After the verdict was announced, some members of the jury were heard saying that they felt the jury instructions were confusing and misleading. Appellant filed a motion for leave to file a motion for a new trial on this basis, which the court overruled. *Id.* at ¶ 32. The court determined that the jury did, in fact, undertake great effort to understand the instructions, asking several questions and seeking clarification. They also had in their possession a copy of the definition of self-defense.

Case No. 25 MA 0082

{¶8}     On direct appeal Appellant attacked his conviction on questions of manifest weight of the evidence pertaining to his voluntary manslaughter and felony murder convictions, and questioned whether the jury instructions on the law of self-defense were confusing and misleading.  We affirmed Appellant's convictions and sentence.  Relevant to the matter now before us, we held that even if jury members believed that Appellant was "somehow not at fault for creating the situation giving rise to the affray, self-defense was still not available to him because there was no imminent threat to Appellant at the time of the shooting and he was not in a place that he was legally permitted to be."  *Id.* at ¶ 61.

{¶9}     Three months after our Opinion was released, Appellant filed an application to reopen his direct appeal in *State v. Morgan,* 2025-Ohio-1312 (7th Dist.) ("*Morgan II*").  In that application, Appellant alleged several grounds of ineffective assistance of counsel related to failure to object to the jury instructions regarding self-defense, failure to file a motion to suppress the dash camera video, and failure to raise whether felony murder properly serves as a predicate offense for felonious assault.  Appellant also urged that there was cumulative error that occurred at trial.  This Court overruled the application, and the Ohio Supreme Court declined jurisdiction.

{¶10}  In early 2025, Appellant filed a series of documents in the trial court seeking to obtain the dash camera video for forensic evaluation.  On May 5, 2025, the trial court denied all of these filings.

{¶11}  On June 26, 2025, Appellant filed a "Petition for Post-Conviction Relief, Request for Discovery Period, and Request for Evidentiary Hearing."  (Capitalization omitted.)  Within his petition, Appellant raised sixteen grounds, with some arguments

overlapping, arguing essentially that his counsel failed to: challenge the unlawful seizure of his dash camera video; investigate irregularities in the video footage; file a motion to suppress; raise arguments pertaining to the warrant that led to "digital searches;" address the jury instructions pertaining to the self-defense charge; and challenge the predicate offense used to support the felony murder charge. Appellant also advanced an argument that this Court erred in applying the cumulative error doctrine. Appellant did not raise any argument pertaining to the jury instructions regarding voluntary manslaughter in this petition.

{¶12} In support of his petition, Appellant attached two handwritten affidavits from someone named Megan Owens, who apparently is or was Appellant's girlfriend. Interestingly, one of those affidavits states that it was intended to support Seventh District Court of Appeals case number 2024 MA 0040, the case number of Appellant's direct appeal. This affidavit also states that it was prepared for purposes of Appellant's application to reopen his appeal. As the handwriting is nearly illegible, it is impossible to determine the date the affidavit was actually signed.

{¶13} The trial court denied Appellant's petition seeking postconviction relief. Appellant timely appeals the trial court's decision to deny this petition.

Postconviction Petition

{¶14} A motion not specifically authorized under the Ohio Rules of Criminal Procedure is classified as a postconviction petition if "it is a motion that (1) was filed subsequent to [the defendant's] direct appeal, (2) claimed a denial of constitutional rights, (3) sought to render the judgment void, and (4) asked for vacation of the judgment and sentence." *State v. Hudson*, 2017-Ohio-4280, ¶ 9 (7th Dist.), quoting *State v. Reynolds*,

79 Ohio St.3d 158, 160 (1997). Appellant's motion meets this criteria, as it was filed subsequent to his direct appeal, asserts a violation of a constitutional right, claims that his sentence is void, and asks for his sentence to be vacated.

{¶15} In order to successfully assert a postconviction petition, "the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction sufficient to render the conviction void or voidable under the Ohio or United States Constitutions." *State v. Agee*, 2016-Ohio-7183, ¶ 9 (7th Dist.), citing R.C. 2953.21(A)(1). The petitioner is not automatically entitled to a hearing. *State v. Cole*, 2 Ohio St.3d 112, 113 (1982). Pursuant to R.C. 2953.21(C), the petitioner bears the burden of demonstrating "substantive grounds for relief" through the record or any supporting affidavits. However, as a postconviction petition does not provide a forum to relitigate issues that could have been raised on direct appeal, *res judicata* bars many claims. *Agee* at ¶ 10.

{¶16} The doctrine of *res judicata* "bars an individual from raising a defense or claiming a lack of due process that was or could have been raised at trial or on direct appeal." *State v. Croom*, 2014-Ohio-5635, ¶ 7 (7th Dist.), citing *State v. Ishmail*, 67 Ohio St.2d 16, 18 (1981). However, where "an alleged constitutional error is supported by evidence that is de hors the record, *res judicata* will not bar the claim because it would have been impossible to fully litigate the claim on direct appeal." *State v. Green*, 2003-Ohio-5142, ¶ 21 (7th Dist.), citing *State v. Smith*, 125 Ohio App.3d 342, 348 (12th Dist. 1997). To overcome the *res judicata* bar, the petitioner must demonstrate that the claim could not have been appealed based on the original trial record. *Agee* at ¶ 11, citing *State v. Combs*, 100 Ohio App.3d 90, 97 (1st Dist. 1994).

<u>Timeliness</u>

**{¶17}** R.C. 2953.21(A)(2) requires a petitioner to file a petition within one year after the trial transcripts are filed in the court of appeals. In relevant part, R.C. 2953.21(A)(2) provides that a postconviction petition:

> [S]hall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction[.] . . . If no appeal is taken, except as otherwise provided in section 2953.23 of the Revised Code, the petition shall be filed no later than three hundred sixty-five days after the expiration of the time for filing the appeal.

**{¶18}** Ohio law sets out a two-part exception to this rule if the petitioner can demonstrate that he or she meets the criteria found in R.C. 2953.23(A)(1)(a)-(b). Pursuant to R.C. 2953.23(A)(1)(a), the petitioner must either show that he:

> [W]as unavoidably prevented from discovery of the facts upon which [he] must rely to present the claim for relief, or, . . . the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

**{¶19}** This record reflects that Appellant filed trial transcripts with this Court on June 28, 2024. Appellant filed his postconviction petition on June 26, 2025. Hence, his petition is timely filed.

<u>Case No. 25 MA 0082</u>

## ASSIGNMENT OF ERROR

The trial court abused its discretion and violated R.C. 2953.21, *Brady,* and *Strickland* by denying Morgan's postconviction petition without an evidentiary hearing despite sworn, material facts dehors the record showing undisclosed digital evidence, unlitigated suppression grounds, and ineffective assistance of counsel.

{¶20} Appellant raises several different arguments within his sole assignment of error. First, he contends that he filed affidavits demonstrating there were sections of the dash cam video used at trial that were inexplicably missing, there were defects in the search warrant used to seize this video, and trial counsel's representation was ineffective. Because the affidavits provide "evidence," Appellant claims he was entitled to an evidentiary hearing and discovery period. Specifically, Appellant contends that he has evidence that he obtained outside of the record that shows the state did not provide a dash camera file, and so the defense was unable to examine the dash camera's metadata. He also claims the search warrant appears defective due to alleged problems with its timing and scope, and that his trial court counsel failed to object to a jury instruction and to language contained in the verdict form.

{¶21} As to the dash camera file, Appellant argues that the failure of the state to provide that file to the defense prevented examination of the embedded metadata, thus impeding Appellant's ability to verify the chain of custody, or obtain an expert to enable him to attack this evidence. He claims that there were minutes of time "missing" from this video.

{¶22} The state counters by first explaining the dynamics behind Appellant's legal defense team. Appellant initially hired a private attorney who apparently advised Appellant to challenge admission of the dash cam video. However, Appellant fired this attorney and retained a different law firm. Counsel from that firm took a different approach, and chose not to file a motion to suppress the dash cam evidence. Appellant's counsel, instead, obtained an expert witness, who testified at length as to the contents of that video. Appellant testified at trial and also relied greatly on the video in giving his own testimony.

{¶23} The record reflects it was Appellant who offered the video as evidence. As noted by the state, the "elongated version" of the video was admitted by the defense as Appellant's exhibit E. (Trial Tr., p. 950.) The state is also correct that Appellant testified at length about the video. The trial transcripts show that Appellant began his direct testimony about the video on page 826. He continued to discuss and play the video, in segments, through page 877. Appellant, himself, spent fifty-one pages of trial transcript playing and discussing the events depicted on the video.

{¶24} Appellant produced affidavits from Megan Owens, who was his girlfriend at the time of trial. Owens testified at Appellant's trial. She testified that she works as a caseworker and holds a bachelor's degree in human services. (Trial Tr., pp. 666-667.) Although Owens' affidavit neglects to identify her employment or contain any reasons why she may be qualified to address issues regarding a video's metadata, it is readily apparent from her testimony that she is not an expert on the issue of video metadata.

{¶25} Based on our review of the affidavits and the procedural history in this matter, it is clear that Appellant could have, and should have, raised this issue on direct

appeal. There is no question that he was aware suppression of the video was possible and that arguments existed as to refuting the admissibility of the video, because in Owens' affidavit she repeatedly avers that she and Appellant discussed this with defense counsel. She concedes that Appellant's original counsel wanted to file a motion to suppress, but Appellant fired that attorney and his new counsel decided against suppression, choosing to attempt to rely on the video as part of the defense. Appellant failed to raise any issue as to suppression on direct appeal. Relevant to this issue, in an affidavit Owens states:

> 1. In November 2022, [Appellant] and I met with [Appellant's attorney]. He provided [Appellant] with partial discovery, including the dash-cam footage and the search warrant used to seize that footage.

> 2. While reviewing the warrant and metadata, [this attorney] and [Appellant] discovered that detectives retrieved the dash-cam on a date that fell outside the warrant's authorized window. [This attorney] acknowledged this discrepancy and suggested that John could use it during pretrial proceedings.

(Postconviction Petition, Exh. 2.)

{¶26} Owens averred "[u]pon examining the filed properties for the incident footage, I encountered a creation and modification date set to July 1, 2022. *No other data appears in the metadata for that file*." (Emphasis added.) (Postconviction Petition, Exh. 2.) She also stated that she "ran a standard metadata program that reveals deeper 'created,' 'modified,' and 'accessed' timestamps." (Postconviction Petition, Exh. 2.) She said that she sent an email to trial counsel on December 15, 2022, in which she mentioned

these discrepancies. Owens also claims she addressed the discovery she admits was provided by the state and was allegedly able to determine from a review of all twenty-six minutes of video segments that approximately seventeen minutes of the video were "missing."

**{¶27}** Whether or not she is qualified, Owens clearly admits that she has already reviewed the metadata that Appellant seeks to review, here, as she specifically stated that "no other data appears in the metadata" and also that she "ran a meta data program." It is equally clear that Appellant possessed the dash cam footage as early as November of 2022, since his girlfriend apparently reviewed the video around that time. While Owens does not appear to be an expert, it can be gleaned that Appellant had access to the metadata prior to trial. Thus, there is no question that Appellant could have raised the issue he now complains of during a pretrial, trial, or at least on direct appeal.

**{¶28}** Regardless, this Court addressed the issue on Appellant's application to reopen his appeal. *See Morgan II*. In that application, Appellant raised the failure of his counsel to contest admission of the dash cam video and argued that *Strickland* demanded his counsel be found ineffective, the same argument he raises, here*.* We addressed the issue at length, stating:

> It appears Appellant advances good arguments in support of his position that a motion to suppress the dash cam evidence should have been filed. However, this court stresses that even without the dash cam video, the testimony at trial supports Appellant's conviction establishing that he did not act in self-defense, as addressed in our December 12, 2024 decision . . . Accordingly, the failure to file a motion to suppress the dash cam

evidence does not amount to "a reasonable probability the result of the trial would have been otherwise had the motion been granted" as the testimony at trial supports Appellant's conviction establishing that he did not act in self-defense when he shot and killed D.P. in the back.

*Id.* at ¶ 13-14.

**{¶29}** To overcome *res judicata,* Appellant is required to show some evidence *de hors* the record in support. While Appellant claims that Owens' affidavits accomplish this goal, she actually confirms the state's contention that Appellant had direct knowledge of the issue prior to trial and could have raised it earlier. Regardless, in Appellant's application to reopen, filed by the same counsel as the instant case, we specifically determined that even if the dash cam evidence had been suppressed, the testimony at trial absent the video evidence overwhelmingly supported Appellant's conviction. This fact remains true. Hence, Appellant's argument as to the dash cam video and his counsel's alleged ineffectiveness is barred by *res judicata.*

**{¶30}** Appellant also contends that there were issues with the timing and the scope of the search warrant used to seize the video. However, he fails to develop these arguments and does not elaborate as to specific concerns about specific defects. Without any guidance from Appellant as to what he seeks to have us review, we are unable to address this argument. We note that Owens' affidavits concede Appellant expressed concern that his warrant contained defects during pre-trial proceedings. Thus, even if Appellant had properly raised the issue in his petition, it would likewise be barred by *res judicata*.

Case No. 25 MA 0082

{¶31} Finally, he takes issue with the court's jury instructions pertaining to voluntary manslaughter. Appellant contends that the instructions and the verdict form treated voluntary manslaughter as a "lesser included offense" of his murder charge instead of properly treating it as "an inferior-degree offense that mitigates murder upon proof of serious provocation." (Appellant's Brf., p. 20.)

{¶32} We note that Appellant did not actually raise this issue within his postconviction petition. While he did raise an issue involving the law regarding lesser-included offenses, in his argument he actually complained that trial counsel should have argued that felony murder cannot serve as a predicate to felonious assault. Nowhere in this argument in his petition to the trial court does he mention the jury instructions treated voluntary manslaughter improperly as a lesser included offense, which is what he now argues in his appeal of the trial court's denial of his petition. As his jury instruction argument raises a new claim, not raised in the first instance to the trial court, we cannot consider it for the first time on appeal.

{¶33} Regardless, in Appellant's application for reopening, he raised an argument that his counsel's failed to raise the issue of whether felony murder serves as a predicate offense for felonious assault, and in failing to challenge the issue provided ineffective assistance as per *Strickland v. Washington*. *Id.* at ¶ 5. This Court analyzed the issue, finding that a charged felony murder does serve as a predicate offense to a felonious assault conviction. We held that Appellant was properly convicted of felonious assault, voluntary manslaughter, and murder, which merged for sentencing purposes. *Id.* at ¶ 17.

{¶34} While Appellant did not challenge the jury instructions regarding voluntary manslaughter when seeking reopening, he was aware of the instructions actually

provided to the jury at the time he filed for reopening. If he sought to challenge the instructions the trial court gave the jury on this issue, he could have done so either on direct appeal or in his application for reopening. In fact, Appellant argued in his application for reopening that the court gave erroneous jury instructions regarding the elements of self-defense. *Id.* at ¶ 8. Appellant had advanced the identical argument on direct appeal. *State v. Morgan,* 2024-Ohio-5843, ¶ 53 (7th Dist.). Consequently, Appellant had two prior opportunities to raise this jury instruction argument as well, and is barred by *res judicata* from raising the issue, here, even if it had been properly advanced to the trial court in his petition.

Conclusion

**{¶35}** Appellant argues that he provided affidavits that establish evidence de hors the record supporting his arguments that dash camera footage was improperly admitted at trial, a search warrant was improperly granted, and that jury instructions provided to the jury were erroneous. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Hanni, J. concurs.

Dickey, J. concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**